UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

RAHEEM JONES,

Defendant.

No. 15 Cr. 661 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

On September 15, 2015, police officers arrested Defendant Raheem Jones when, after allegedly fleeing from a vehicle and throwing a backpack to the ground, the officers examined the backpack and recovered a handgun. (Compl., ECF No. 1.) Jones has been indicted as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 7.) Before the Court is Defendant's omnibus motion (ECF No. 9) seeking 1) suppression of evidence of the handgun on the grounds that his rights under the Fourth Amendment were violated, 2) an order compelling the Government to fulfill its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and Federal Rule of Evidence 404(b), and 3) preclusion of Defendant's prior convictions, bad acts, or uncharged crimes as evidence at trial or for impeachment purposes pursuant to Federal Rule of Criminal Procedure 609, or the opportunity to be heard at a hearing regarding such material. For the reasons that follow, the motion is DENIED in part and GRANTED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/14/2016

## ALLEGED FACTS[1]

Around lunchtime on September 15, 2015, there was a shooting in the vicinity of Clinton Avenue in New Rochelle, New York. (Compl. ¶ 3a.) Based on an eyewitness account made to local law enforcement officers, shots were fired by an individual in the front passenger seat of a black BMW SUV into another car. (*Id.* ¶ 3b.) The eyewitness described the shooter as a black man with "a decent amount of hair." (*Id.*) The black SUV quickly departed the scene after the shooting. (*Id.*) Shortly after the shooting, police dispatch sent out an alert about the shooting to other officers operating in the area and requested assistance locating the black BMW SUV involved in the shooting. (*Id.* ¶ 3d.)

A Sergeant with the Westchester County Department of Public Safety, while on patrol in a marked car, received the broadcast over his radio. (*Id.* ¶ 4a.) Shortly thereafter, the Sergeant observed a black BMW SUV traveling on the Saw Mill Parkway. (*Id.* ¶ 4b.) The Sergeant followed the car off of the highway onto local streets, and observed what appeared to be two men occupying the driver and passenger seats. (*Id.*) Defendant does not believe the SUV had violated any traffic laws up to that point. (Def. Decl. ¶ 5.)[2]

The Sergeant tried to stop the SUV in the vicinity of the nearby town of Yonkers by turning on the lights of the patrol car. (Compl. ¶ 4b.) The video camera mounted to the dash of the patrol car captured what followed. (*Id.* ¶ 6a-c.) The SUV halted momentarily and the Sergeant pulled behind it. (*Id.* ¶¶ 4b, 6a.) Before the Sergeant could exit his vehicle and

---

[1] The following facts are taken from the felony complaint, and the Defendant's declaration filed in support of the motion (ECF No. 9, Ex. 1) ("Def. Decl."). The Government has not contested any of the information contained in Defendant's declaration. (ECF No. 10 ("Gov't Opp'n").)

[2] Defendant has filed, *pro se*, a competing declaration indicating he "did not tell [his] attorney" many of the items contained in the declaration submitted in support of the motion. (ECF No. 15 (stating his attorney had provided a blank sheet of paper which Defendant signed).) Nevertheless, the majority of the facts contained in the supporting declaration are alleged in the complaint (as captured by the dashboard camera) and not contradicted by the *pro se* declaration.

approach, the SUV drove away at a high rate of speed.  (*Id.*)  The Sergeant followed the SUV in his patrol car.  (*Id.* ¶ 4b, 6b.)  Then, the SUV slowed down and the Defendant jumped out and ran off,[3] carrying a backpack, with officers in pursuit.  (*Id.* ¶¶ 4c-d, 6b-c.)

After a short chase, Defendant ran towards a building and jumped down into an enclosed lower level area just outside of the building.  (*Id.* ¶ 4d, 6c.)  While fleeing, he tossed away the backpack he had been carrying.  (*Id.* ¶ 4d.)  Because Defendant was unable to exit the lower area because the door was locked, the Sergeant was able to detain him from up above until additional officers arrived on the scene.  (*Id.* ¶ 4d-e.)  Two officers jumped down into the lower level area, and one officer retrieved the discarded backpack.  (*Id.*)  When the backpack was opened, a Smith & Wesson .38 caliber revolver was recovered from inside.  (*Id.* ¶ 5a.)  Defendant was subsequently placed under arrest.  (*Id.* ¶ 4e.)

## DISCUSSION

**I.      Motion to Suppress Evidence of the Handgun**

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amends. IV, XIV; *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) ("Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government.").  Although a search usually requires a warrant issued upon a showing of probable cause, certain searches are allowed under Fourth Amendment jurisprudence "when [an] officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Illinois*

---

[3] The *pro se* declaration, at most, contests whether Defendant had a "fear of police officers in the past." (ECF No. 15, at ¶ 5.)  But, the motivation for Defendant's flight is irrelevant to the suppression analysis.

*v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) ("'reasonable suspicion' is a less demanding standard than probable cause").

In instances of unreasonable searches or seizures, "both the 'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree'" are generally subject to exclusion at trial. *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (noting the exclusionary rule is "applicable only . . . where its deterrence benefits outweigh its substantial social costs") (citations omitted). The exclusionary rule—and the protections contained within the Fourth Amendment—do not apply, however, when evidence is obtained in the absence of a seizure. "[A] police pursuit in *attempting* to seize a person does not amount to a 'seizure' . . . ." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)) (emphasis added). *See also United States v. Swindle*, 407 F.3d 562, 572 (2d Cir. 2005) (quoting *Lewis*, 523 U.S. at 845 n.7) ("Put simply, '[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment.'"). A comparison of the events surrounding the discovery of illicit drugs in *Reid v. Georgia*, 448 U.S. 438 (1980), and *California v. Hodari D.*, 499 U.S. 621 (1991), demonstrates this distinction.

In *Reid*, a DEA agent performed an unlawful *Terry* stop, which led to the defendants "agree[ing] to return to [an airline] terminal and [] consent[ing] to a search of their persons and their shoulder bags." 448 U.S. at 439, 441. Upon reentering the terminal, one defendant "began to run and before he was apprehended, abandoned his shoulder bag" containing cocaine, and the government sought to introduce that evidence against him at trial. *Id.* at 439-40. The Court concluded that the defendant was "seized" when he made the decision to flee, and consent to

4

search the bag given after the unlawful *Terry* stop could not support the seizure or the admission of the recovered evidence. *Id.* at 441.

In contrast, the Court in *Hodari* found that because the defendant was not seized when he abandoned drugs, "[the defendant's] motion to exclude evidence of [the drugs] was properly denied." 499 U.S. at 629. There, a group of youths huddled together in a high-crime area saw patrol officers approaching, "apparently panicked, and took flight." *Id.* at 622-23. The officers gave chase, and while fleeing the defendant "tossed away what appeared to be a small rock" moments before an officer "tackled [him], handcuffed him, and radioed for assistance." *Id.* at 623. "[T]he rock he had discarded was found to be crack cocaine." *Id.* The Court reasoned that "assuming that [the officer's] pursuit . . . constituted a 'show of authority' enjoining [the defendant] to halt, since [the defendant] did not comply with that injunction he was not seized until he was [later] tackled," meaning that "[t]he cocaine abandoned while he was running was . . . not the fruit of a seizure[.]" *Id.* at 629.

The Second Circuit's subsequent decision in *United States v. Swindle*, 407 F.3d 562 (2d Cir. 2005), following *Hodari*, presents a close comparison to the facts alleged in this case. In *Swindle*, officers were on patrol in search of a fugitive drug dealer. 407 F.3d at 564 ("a black man who was 5′8″ tall and at the time weighed 145 pounds"). Officers had previously seen the fugitive "near" a black Pontiac Bonneville, though he had not been known to drive one. *Id.* During their patrol, they saw a black male approach a known drug house in a black Pontiac Bonneville. *Id.* at 564, 569 (but "Swindle was five inches taller—and 70 pounds heavier—than [the fugitive]"). The officers followed him and, "[w]ithin a minute," they had "activat[ed] their police strobe light" and "ordered Swindle to pull over." *Id.* "Swindle disobeyed the officers' order to stop and kept driving," eventually "throwing a plastic bag out of the car" that was later

"found to contain 33 smaller bags of crack cocaine." *Id.* He eventually pulled over, fled on foot, and was apprehended. *Id.* Because the Circuit was "compelled to hold that Swindle was seized only when the police physically apprehended him—at which time the officers had probable cause for an arrest" in light of *Hodari*—it also "conclude[d] that the drugs Swindle discarded prior to his apprehension were not the fruit of a Fourth Amendment seizure." *Id.* at 573.

While Defendant almost exclusively argues that the decision to stop the black BMW SUV was improper, (*see* Def. Mot. at 9 ¶ 11 & Ex. 1 ("Def. Mem.") at 1-5, ECF No. 9), the suppression analysis in this case is governed by *Hodari* and *Swindle*, which renders the propriety of that initial decision irrelevant.[4] In fact, under *Hodari*, Defendant's "flight provided the police with reasonable suspicion for the seizure once they had caught up with [him]." *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013); *United States v. Simmons*, 560 F.3d 98, 106 (2d Cir. 2009) (quoting *Swindle*, 407 F.3d at 568) ("the grounds for a stop may . . . be based on events that occur after the order to stop is given . . . where the suspect attempts to flee from police after being ordered to stop"); *see also United States v. Franklin*, 323 F.3d 1298, 1302 (11th Cir. 2003) ("We must ask whether a reasonable and innocent person facing this situation would have been caused to flee in the same manner"); *but see Swindle*, 407 F.3d at 570 ("Requiring a police officer to have reasonable suspicion to order a stop would be truer to Fourth Amendment values than the current [*Hodari*] rule.").

---

[4] Based on the facts alleged, it is unclear if any additional details were included in the alert to law enforcement officers aside from describing the vehicle as a "black BMW SUV." The complaint is silent as to whether the officer possessed the model of the SUV, year, license plate information, or any other description which may have narrowed the potential universe of vehicles. *Cf. White v. Luoma*, No. 05 Civ. 241, 2009 WL 734679, at *5 (W.D. Mich. Mar. 10, 2009) (habeas) ("A dark Pontiac 6000, in and of itself, may have been insufficient, and an improperly displayed plate, in and of itself, may have been insufficient, but together the characteristics certainly gave rise to a reasonable belief or suspicion that defendant's vehicle was involved in the crimes such that further investigation was appropriate.") The cases cited by the Government are inapposite as they involve more unique vehicle descriptions. (*See* Gov't Opp'n at 13 (collecting cases).) It is also unclear if the Sergeant had a description of the alleged shooter or if he was able to clearly see the passenger in the SUV when he turned on his flashing lights.

Critically, and the dispositive factor in this case, the SUV did not stop and submit to the Sergeant's seizure, nor did Defendant. To the contrary, the SUV sped off after momentarily stopping. *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007) ("to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily"). Thus, irrespective of whether the decision to stop the black BMW SUV—of which there may be many—could survive Fourth Amendment scrutiny, the eventual discovery of the abandoned firearm does not fall within the exclusionary rule based on Supreme Court precedent. Defendant allegedly jumped from a moving car and continued to flee on foot to evade capture, abandoning the bag containing the handgun in the process. *Id.* at 219 (quoting *Brendlin v. California*, 551 U.S. 249, 262 (2007)) ("a fleeing man is not seized until he is physically overpowered").

"[A]bandonment may be found where a fleeing defendant 'relinquishes an object to make his flight easier.'" *United States v. Kirlew*, 291 F. App'x 536, 538 (4th Cir. 2008) (per curiam) (quoting *United States v. Basinski*, 226 F.3d 829, 837 (7th Cir. 2000)). And "[o]f course 'abandoned' property may be seized[.]" *Massachusetts v. Painten*, 389 U.S. 560, 566 (1968) (quoting *Abel v. United States*, 362 U.S. 217, 241 (1960)); *Hodari*, 499 U.S. at 629 (quoting *Hester v. United States*, 265 U.S. 57, 58 (1924)) ("where revenue agents [] picked up containers dropped by moonshiners whom they were pursuing without adequate warrant" the resulting evidence was not excluded: "'there was no seizure in the sense of the law when the officers examined the [containers] after they had been abandoned'").

Given the controlling precedent in this area, the Court must conclude, as the Second Circuit did in *Swindle*, that:

> [Defendant] was not seized until the police physically apprehended him, and therefore that the [gun] did not have to be suppressed as the fruit of a poisonous tree. Regardless of how unreasonable it was for the officers to order him to pull over, and regardless of how

> reasonable it was for [Defendant] to have felt restrained in the face of the flashing police strobe light, there was no immediate "physical force" applied or "submission to the assertion of authority." Therefore, no seizure immediately occurred. The [gun] that [Defendant] abandoned before being apprehended w[as] thus not the product of a Fourth Amendment seizure.

*Swindle*, 407 F.3d at 572-73. Defendant's motion to suppress evidence of the handgun is therefore denied.

## II.   Motion to Compel Disclosure

Defendant's motion also seeks to compel the disclosure of *Brady* material and the Government's anticipated Rule 404(b) evidence. (Def. Mot. at 12-15.) As to the *Brady* material, nowhere in Defendant's motion does he allege the existence of exculpatory material that has not been turned over. The Government has represented that it has "complied with all of its discovery obligations, and will continue to do so." (Gov't Opp'n at 14.) As there is no dispute at this juncture for the Court to resolve, Defendant's motion is moot in so far as the Government has already provided the necessary discovery and premature in the absence of an alleged discovery violation. This portion of Defendant's request is therefore denied without prejudice to renew. In the event that Defendant becomes aware of any failure on the Government's part to comply with its *Brady* obligations, he may renew his motion at that time.

Defendant requests that any Rule 404(b) evidence be turned over 30 days prior to trial. Rule 404(b) requires the Government to provide "reasonable notice" in advance of trial of the general nature of any evidence of other crimes, wrongs, and acts it intends to introduce at trial. Fed. R. Evid. 404(b). Although 30 days is slightly larger than the standard disclosure period, the Court finds this timeframe to be reasonable. *See United States v. DiStefano*, 129 F. Supp. 2d 342, 351 (S.D.N.Y. 2001) (citing *United States v. Richardson*, 837 F. Supp. 570, 575 (S.D.N.Y. 1993)) ("notice afforded more than ten working days before trial has consistently been deemed

by courts in this circuit as 'reasonable' within the meaning of Rule 404(b)"). The Government has indicated it will produce such evidence "in compliance with the Court's scheduling order relating to an anticipated trial date." (Gov't Opp'n at 14.) In light of potential motions *in limine*, Defendant's request to preclude the admission of such evidence as discussed below, and the currently scheduled pre-trial status conference, the Court grants this portion of Defendant's motion and directs the Government to immediately disclose all Rule 404(b) evidence which it intends to offer against Defendant in sufficient detail to permit defense counsel to contest its admissibility. *See United States v. Lamb*, 945 F. Supp. 441, 466 (N.D.N.Y. 1996).

Though the *Brady* portion of Defendant's motion to compel disclosure is denied as either moot or premature as a result of the Government's representations, the Government is reminded of its continuing disclosure obligations pursuant to Rule 16, *Brady*, and *Giglio v. United States*, 405 U.S. 150 (1972), with which the Court expects the Government's full compliance. *United States v. Gil*, 297 F.3d 93, 105 (2d Cir. 2002) (quoting *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001)) (*Brady* material must be disclosed "in time for its effective use" at trial).

### III. Motion to Preclude Admission of Prior Convictions, Bad Acts, or Uncharged Crimes at Trial under Rule 609 or, alternatively, Request for a Hearing

As discussed above, Defendant also seeks preclusion of his prior convictions (and other Rule 404(b) evidence) pursuant to Federal Rule of Evidence 609, noting his intention to testify on his own behalf at trial. (Def. Mot. at 6, 8.) The Government has not opposed this branch of Defendant's motion, has not indicated whether it plans to use such evidence to impeach Defendant should he testify, nor has it provided Defendant with sufficient detail of its anticipated Rule 404(b) evidence. (*See generally* Gov't Opp'n at 14.)

To the extent that a prior conviction operates as "proof of a prior conviction [] necessary for the offense to be substantiated," such convictions are generally not subject to exclusion.

9

*United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) ("A prior conviction is not prejudicial where the prior conviction is an element of the crime").  Notably, Defendant has not indicated an intention to stipulate to a prior felony conviction, which is an element of the crime charged.  But, to the extent Defendant has multiple convictions, prior bad acts, or uncharged crimes that the Government seeks to introduce as relevant to his credibility should Defendant testify, *see* Fed. R. Evid. 609(a), the Court reserves judgment on Defendant's motion to preclude such evidence until after a hearing is held and the probative value of the evidence is weighed against its potential for prejudice.  *See, e.g.*, *United States v. Torres*, 610 F. Supp. 1089, 1093 (E.D.N.Y. 1985) ("the government will not be permitted to introduce evidence of the nature of the prior convictions unless and until defendant opens the door by contravening knowledge and intent").

The Government has no obligation to provide impeachment material pursuant to Rules 608 or 609 prior to trial if the convictions are less than ten years old.  *United States v. Livoti*, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998).  Rule 609(b) does require, however, the Government to provide pretrial notice of its intention to use at trial convictions that are more than ten years old, and the Government is ordered to give such notice now.  *Lamb*, 945 F. Supp. at 466.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to suppress evidence of the handgun recovered during his arrest is DENIED.  The Court DENIES without prejudice the Defendant's motion to compel the Government to comply with its disclosure obligations under *Brady*, but GRANTS Defendant's motion to the extent that the Government has not disclosed Rule 404(b) or Rule 609 evidence which it intends to offer against Defendant in sufficient detail to permit defense counsel to contest its admissibility.  The requisite disclosures should be made and notice provided prior to the next scheduled conference.  The Court reserves judgment on Defendant's

motion to preclude the admission of his prior convictions, bad acts, or uncharged crimes at trial or for the purposes of impeachment pending the outcome of a hearing. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 9.

Additionally, based on Defendant's competing *pro se* declaration filed for consideration with this motion and his subsequent letter to the Court requesting new counsel (ECF No. 16), the Court will consider the appointment of substitute counsel at the next scheduled conference.

Dated: December 14, 2016
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge